# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 29, 2022          Decided August 11, 2023

No. 21-1195

FAIRLESS ENERGY, LLC,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC,
INTERVENOR

———

Consolidated with 21-1264

———

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

———

*Jeffrey S. Bucholtz* argued the cause for petitioner.  On the briefs were *Ashley C. Parrish, Zori G. Ferkin,* and *Christine M. Carletta.*

*Carol J. Banta*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Matthew R. Christiansen*, General Counsel, and *Robert H. Solomon*, Solicitor.

2

*Matthew J. Binette* argued the cause for intervenor. With him on the brief was *Michael J. Thompson.*

Before: CHILDS, *Circuit Judge*, and ROGERS, *Senior Circuit Judge*.*

Opinion for the Court filed by *Circuit Judge* CHILDS.

CHILDS, *Circuit Judge*: Petitioner Fairless Energy, LLC (Fairless Energy) contends that it pays too much for the transportation of natural gas to fuel its electric power generating plant located in Fairless Hills, Pennsylvania (the Fairless plant). In these consolidated petitions for review of orders of the Federal Energy Regulatory Commission (the Commission), Fairless Energy maintains that the Commission acted arbitrarily and capriciously, and contrary to reasoned decisionmaking, when it exercised primary jurisdiction over Fairless Energy's natural gas transportation rate dispute with intervenor Transcontinental Gas Pipe Line Company, LLC (Transco), and determined that the appropriate rate was the incremental rate for pipeline expansion under Transco's Tariff. For the following reasons, the court denies the petitions for review.

## I.

### A.

The Natural Gas Act of 1938, 15 U.S.C. §§ 717–717z, "confers upon [the Commission] exclusive jurisdiction over

---

* Senior Circuit Judge Silberman was a member of the panel before his death on October 2, 2022. Judges Childs and Rogers have acted as a quorum in this opinion. *See* 28 U.S.C. § 46(d).

3

the transportation and sale of natural gas in interstate commerce for resale." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 301 (1988) (citation omitted); *see also* 15 U.S.C. § 717c(a). Under the Natural Gas Act, the Commission must ensure that the rates for the transportation or sale of natural gas are "just and reasonable." *See* 15 U.S.C. § 717c(a). In requiring a just and reasonable rate, the Commission generally allows pipelines to offer two rate options: recourse and negotiated rates. A recourse rate is "a rate 'based on a pipeline's cost of providing service including an opportunity for the pipeline to earn a reasonable return on its investment'"; a negotiated rate is a bargained-for amount "which permit[s] a pipeline to forgo cost-of-service rates with an individual shipper." *Sierra Club v. FERC*, 38 F.4th 220, 229 (D.C. Cir. 2022) (quoting *Alts. to Traditional Cost-of-Service Ratemaking for Nat. Gas Pipelines*, 74 FERC ¶ 61,076, 61,224–25 (1996)).

**B.**

Transco is a natural gas company under the Natural Gas Act and owns and operates an interstate natural gas transportation pipeline. Transco's pipeline starts in southern Texas and runs along the Gulf of Mexico through Texas, Louisiana, Mississippi, and Alabama. From Alabama, the pipeline runs up to the northeast through Georgia, South Carolina, North Carolina, Virginia, Maryland, Pennsylvania, and New Jersey, before reaching the system's terminus in the New York metropolitan area. The Fairless plant uses natural gas transported through this interstate pipeline.

In December 1999, the Commission conditionally approved Transco's proposal "to construct and operate 154.3 miles of . . . pipeline loop and replacement facilities and to add compression . . . on its existing transmission system between Leidy, Pennsylvania and the New Jersey suburbs of New York

4

City (the MarketLink project)." *Indep. Pipeline Co. ANR Pipeline Co. Nat'l Fuel Gas Supply Corp. Transcon. Gas Pipe Line Corp.*, 89 FERC ¶ 61,283, 61,824 (1999) (*Indep. Pipeline Co.*). Transco expected the MarketLink project would create an additional 700,000 dekatherms per day (Dth/d) of capacity on its pipeline and would be paid for by the MarketLink's shippers.[1] "Transco state[d] that it w[ould] provide firm transportation services for its MarketLink shippers" under Transco's rate schedule for firm transportation (Rate Schedule FT).[2] *Id.* ¶ 61,826. Transco provided shippers with "the option of paying a cost-based, incremental, recourse rate . . . or an individually negotiated rate for firm service."[3] *Id.* In April

---

[1] A dekatherm or decatherm is a unit of energy used in the natural gas industry that is "equal to one million British Thermal Units, or over one billion joules." *Myersville Citizens for a Rural Cmty., Inc. v. FERC*, 783 F.3d 1301, 1307 n.2 (D.C. Cir. 2015).

[2] "Under a firm transportation agreement, a pipeline agrees to transport a fixed amount of the firm shipper's natural gas on a regular basis." *Natural Gas Contracts*, ¶ 306.006 (1998). "Under an interruptible transportation agreement, a pipeline commits to transport the interruptible shipper's gas only after the pipeline's firm transportation obligations are fulfilled." *Id.* "Firm transportation is generally more expensive and more reliable than interruptible transportation, because a portion of the pipeline's capacity is specifically reserved for firm service." *Id.* ¶ 306.006A. "A firm service agreement gives the shipper the greatest assurance that its gas will actually be transported." *Id.*

[3] Pipelines generally have two ways to "allocate the costs associated with new or expanded facilities . . . ." *Consolidated Edison Co. of N.Y., Inc. v. FERC*, 315 F.3d 316, 320 (D.C. Cir. 2003). "The pipeline may 'roll in' these costs, by distributing additional charges among all customers of the pipeline system." *Id.* Alternatively, the pipeline may charge an incremental rate to the customers who are

5

2000, the Commission fully authorized Transco to construct and operate the MarketLink project.

A few months later, Transco and Fairless Energy's predecessor, Virginia Power Energy Marketing (Virginia Marketing), reached a ten-year service agreement (No. 1044181) for a transportation contract quantity (TCQ) of 100,000 Dth/d of natural gas at a negotiated rate of $9.125/Dth. Transco transported the natural gas using MarketLink capacity from a receipt point at Leidy, Pennsylvania to the Fairless plant. The Commission later amended its authorization to allow Transco to construct the MarketLink project in two phases and acknowledged that it had notice that Virginia Marketing was a replacement shipper for the MarketLink project.

In October 2002, the Commission accepted an amended 10-year service agreement between Transco and Virginia Marketing for a TCQ of 100,000 Dth/d at a negotiated rate of $9.125/Dth commencing on November 1, 2002. A few years later, in 2006, Transco and Virginia Marketing agreed to a second amendment of their service agreement (No. 1044181) to reduce the TCQ from Leidy to the Fairless plant from 100,000 Dth/d to 50,000 Dth/d and add 50,000 Dth/d from Transco's Station 210 in Mercer County, New Jersey. In Amended Exhibit C of their 2006 Agreement, Transco and Virginia Marketing set out a negotiated rate for both pipeline routes: from Leidy to the Fairless plant, the negotiated rate was the "Daily Reservation Rate of $0.30 per dt" and, from Station 210 to the Fairless plant, the negotiated rate would be the "generally applicable Zone 6 to Zone 6 daily reservation and commodity rates under Rate Schedule FT." 2006 Serv. Agt.,

_____

solely expected to benefit from the improved facilities. *See id.* (citation omitted).

6

J.A. 64.    Additionally, Transco and Virginia Marketing extended the duration of their agreement to November 1, 2018. The Commission received notice of the amendment in December 2009, and accepted it the following month.

In October 2013, the Commission granted Virginia Marketing's petition for a temporary waiver of pipeline capacity requirements to reassign its transportation agreements to facilitate its exit from the natural gas market.   Thereafter, on March 28, 2014, Transco and Virginia Marketing restructured their one service agreement into three separate service agreements.   As relevant here, Contract Nos. 9154534 and 9154535 each provided for a TCQ of up to 50,000 Dth/day from Station 210 to the Fairless plant for a term running from April 1, 2014, until November 1, 2033.   However, the two contracts had different rate terms and daily reservation rates. Specifically, Contract No. 9154534 contained a negotiated rate of $0.16/Dth for a period starting on April 1, 2014, and lasting until November 1, 2018.   Contract No. 9154535 contained a negotiated rate equal to Zone 6 to Zone 6 from April 1, 2014, through November 1, 2033.   The Commission accepted this restructuring in April 2014.

In December 2018, the Commission granted a temporary waiver of transportation capacity release provisions to allow Virginia Marketing, now Dominion Energy Fuel Services, Inc., to transfer, release, and assign its service agreements with Transco to Dominion Energy Fairless, LLC (Dominion Fairless).   The Commission acknowledged that the agreements transferred to Dominion Fairless included the two Transco service agreements (Nos. 9154534, 9154535) to deliver natural gas to the Fairless plant from Station 210.   Additionally, the Commission observed that the rate in service agreement No. 9154534 would convert from a negotiated rate to a tariff-based rate effective November 1, 2018.

7

On December 14, 2018, Transco and Dominion Fairless executed the service agreement at issue here (the 2018 Agreement) for transportation of the 50,000 Dth/d represented in No. 9154534.  Like prior MarketLink agreements involving Transco, the 2018 Agreement required Dominion Fairless to compensate Transco for natural gas delivered in accordance with the applicable rate in Transco's Tariff, unless the parties mutually agreed to a negotiated rate, which would need to be set out in Exhibit C.  In Exhibit C, Transco and Dominion Fairless stated "None" for the "Specification of Negotiated Rate and Term."  2018 Serv. Agt., J.A. 81.

On February 11, 2019, Fairless Energy, Dominion Fairless's successor, communicated to Transco that it was overcharging for natural gas transportation services rendered starting in December 2018.  Fairless Energy asserted that Transco's invoices incorrectly quoted a higher billing rate of $0.25852/Dth, a MarketLink project incremental rate, instead of $0.13032/dth, the non-incremental rate for transportation points within Zone 6 under Rate Schedule FT.  Although it paid the full amount invoiced, Fairless Energy requested a refund of amounts purportedly overpaid to Transco.

Almost two years later, Fairless Energy filed a petition against Transco in Harris County, Texas state court for breach of contract, damages in the amount of its overpayments, and a declaration of its rights and obligations under the 2018 Agreement.  Transco moved to dismiss the Texas state court action for lack of subject-matter jurisdiction or, alternatively, to stay the proceeding pending a decision by the Commission as to the applicable transportation rate.  That same day, Transco sought a declaration from the Commission that the appropriate transportation rate was the incremental rate for the MarketLink project under Transco's Tariff.  Transco asserted that its petition was properly before the Commission because the

8

dispute with Fairless Energy was within the Commission's "exclusive and primary jurisdiction." Pet. 1, J.A. 3.

The Texas state court subsequently denied Transco's motion to dismiss or stay the suit and Fairless Energy moved to intervene and oppose Transco's petition before the Commission. On June 30, 2021, the Commission granted Transco's petition after concluding that the Commission should exercise primary jurisdiction over the dispute between Transco and Fairless Energy. *Order on Petition for Declaratory Order*, 175 FERC ¶ 61,260, 62,505 (2021) (*Pet. Order*) (J.A. 136). The Commission determined that the appropriate rate for transportation of natural gas to the Fairless plant was the MarketLink project's incremental rate under Transco's Rate Schedule FT. *Id.* (J.A. 137).

On August 30, 2021, the Commission denied Fairless Energy's request for rehearing by operation of law, *see Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration*, 176 FERC ¶ 62,100 (2021), though the Commission went on to issue an order on November 18, 2021, addressing Fairless Energy's arguments for rehearing. *Order Addressing Arguments Raised on Rehearing*, 177 FERC ¶ 61,116 (2021) (*Reh'g Order*) (J.A. 234–44). Fairless Energy timely filed petitions for review of the Commission's orders dated June 30, August 30, and November 18, 2021.

## II.

This court has jurisdiction to review the Commission's orders pursuant to 15 U.S.C. § 717r(b). The court reviews the Commission's orders under the familiar arbitrary and capricious standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *See Am. Gas Ass'n v. FERC*, 593 F.3d 14, 19 (D.C. Cir. 2010). The court is empowered "to reverse any

9

agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099, 1102 (D.C. Cir. 2019) (citation omitted).   However, the court will uphold the Commission's determination if it "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). "'[A]n agency must conform to its prior practice and decisions or explain the reason for its departure from such precedent,' . . . and must provide 'reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored.'" *E. Ky. Power Coop., Inc. v. FERC*, 489 F.3d 1299, 1306 (D.C. Cir. 2007) (alteration in original) (citations omitted).

"Congress explicitly delegated to [the Commission] broad powers over ratemaking, including the power to analyze relevant contracts." *Tarpon Transmission Co. v. FERC*, 860 F.2d 439, 441–42 (D.C. Cir. 1988) (citation omitted). "Judicial scrutiny under the Natural Gas Act is limited to assuring that the Commission's decisionmaking is reasoned, principled, and based upon the record." *Columbia Gas Transmission Corp. v. FERC*, 628 F.2d 578, 593 (D.C. Cir. 1979).

**A.**

Fairless Energy challenges the Commission's decision to exercise primary jurisdiction over "a contract dispute that could otherwise be subject to the jurisdiction of another forum." Pet'r Br. 34 (citation omitted).   "The doctrine of primary jurisdiction . . . is concerned with promoting proper relationships between the courts and administrative agencies

10

charged with particular regulatory duties." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956). "'Primary jurisdiction' . . . applies where a claim is originally cognizable in the courts, and . . . enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body . . . ." *Id.* at 63–64 (citing *Gen. Am. Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 433 (1940)).

Although there is not a fixed formula for primary jurisdiction, the Commission generally considers three factors in determining whether it should assert primary jurisdiction over a dispute:

> (1) whether the Commission possesses some special expertise which makes the case peculiarly appropriate for Commission decision; (2) whether there is a need for uniformity of interpretation of the type of question raised in the dispute; and (3) whether the case is important in relation to the regulatory responsibilities of the Commission.

*Bay Gas Storage Co., Ltd.*, 131 FERC ¶ 61,034, at P 21(2010) (*citing Ark. La. Gas Co. v. Hall (Arkla)*, 7 FERC ¶ 61,175, 61,322 (1979)) (the *Arkla* factors). "Whether to exercise primary jurisdiction is a matter solely within the Commission's discretion." *Id.* (citing *Portland Gen. Elec. Co.*, 72 FERC ¶ 61,009, 61,021 (1995)).

Fairless Energy maintains that none of the *Arkla* factors are present and, therefore, the Commission did not engage in reasoned decisionmaking in choosing to exercise primary jurisdiction over the dispute. The Commission takes a contrary position urging that all three *Arkla* factors support its decision

11

to exercise primary jurisdiction over the rate dispute.[4]  The court has not previously had an occasion to reverse the Commission's decision to exercise primary jurisdiction over a natural gas transportation rate dispute.  After consideration of the *Arkla* factors, the court declines to do so in this matter as well.

## 1.

The first *Arkla* factor considers whether issues require some special expertise possessed by the Commission.  *Bay Gas Storage Co.*, 131 FERC ¶ 61,034, at P 21. Fairless Energy contends that "the parties' dispute does not raise any issue within the Commission's special expertise" because "[d]etermining which rate the parties agreed would apply is a straightforward question of state contract law that is appropriately resolved in state court."   Pet'r Br. 34–35. Fairless Energy supports this argument by pointing to cases where the Commission declined to exercise primary jurisdiction over "routine contractual disputes."  Pet'r Br. 37 (citing *Hartree Partners, LP v. N. Nat. Gas Co.*, 176 FERC ¶ 61,017 (2021); *BG Energy Merchs., LLC v. Crosstex LIG, LLC*,

---

[4] In the November 18, 2021 order, the Commission explained that "all of the [*Arkla*] factors do not need to be present and . . . the Commission has retained jurisdiction even though none of the typical factors are present if it has reason to do so."  *Reh'g Order* at P 19 & n.40 (J.A. 241) (citing *Bos. Edison Co. v. Town of Concord*, 49 FERC ¶ 61,213, 61,775 (1989) (the Commission "acknowledg[ed] [that] none of the factors for primary jurisdiction were met but resolv[ed] [the] case because of language in a prior order suggesting [the Commission] would consider billing disputes"); *El Paso Nat. Gas Co. v. Kaneb Energy Co.*, 54 FERC ¶ 61,262, 61,761 (1991) (the Commission "consider[ed] whether 'other special circumstances' were present suggesting [it] should retain jurisdiction after applying *Arkla* factors")).

12

136 FERC ¶ 61,098 (2011); *Portland Gen. Elec. Co.*, 72 FERC
¶ 61,009 (1995); *Tex. Am. Energy Corp. v. Tenn. Gas Pipeline
Co.*, 39 FERC ¶ 61,062 (1987); *Arkla*, 7 FERC ¶ 61,175).

The Commission provided a reasoned explanation
consistent with its precedents. The Commission rejected
Fairless Energy's characterization of the dispute as the
construction of contracts governed by state law and noted that
the contract at issue is Transco's rate schedule FT pro forma
service agreement, which provides that the appropriate rate
from the tariff applies when, as here, there is no negotiated rate.
*Pet. Order* at P 44 (J.A. 127–28). The "tariff lists at least 32
incremental rates, all under Rate Schedule FT, in addition to a
general, non-incremental rate under Rate Schedule FT." *Id.* at
P 45 (J.A. 128). The Commission explained that determining
which of those rates applied necessitated "interpreting
Transco's tariff and the service agreement to determine the
facilities being used to provide such service and the rate
applicable to such facilities . . . [and] the relevant certificate
orders relating to the facilities used," and was thus
distinguishable from the contract cases on which Fairless
Energy relied. *Id.* at P 45 (J.A. 128). The Commission cited
precedent acknowledging its special expertise in these matters
because of the frequency with which the Commission passes
on expansion rates within rate schedules and the need to
interpret tariffs in light of Commission policy. *Id.* at P 46
(citing *United Illuminating Co. v. Dominion Energy Mktg, Inc.*,
111 FERC ¶ 61,224, *reh'g granted on other grounds*, 112
FERC ¶ 61,279 (2005)) (J.A. 128 n.71). Accordingly, the
Commission's conclusion that the first *Arkla* factor weighed in
favor of exercising primary jurisdiction was consistent with
reasoned decisionmaking.

13

**2.**

The second *Arkla* factor considers whether issues require "uniformity in interpretation." *Bay Gas Storage Co.*, 131 FERC ¶ 61,034, at P 21. As to this factor, Fairless Energy posits that the Commission's justification for uniformity of interpretation in relation to the 2018 Agreement "unreasonably overlooks the specific facts of this case." Pet'r Br. 43. Fairless Energy further asserts that answering the only question in this matter, "which rate in the tariff did the parties agree would apply," only requires consideration of "Texas state law and . . . predecessor agreements, capacity releases, and public filings." Pet'r Br. 43.

The Commission explained that resolution of the rate dispute would not only affect Transco and Fairless Energy but could also have industry-wide effects. *Pet. Order* at P 47 (J.A. 129). The Commission acknowledged Fairless Energy's argument that the "dispute requires in part an analysis of the facts and circumstances of the parties' contracting history" but explained that there was still a need for "consistent application" of how tariffs and service agreements are construed in similar disputes. *Id.* Indeed, it pointed to other shippers with service agreements with Transco for expansion projects that would be impacted by the interpretation. *Id.* The Commission also explained that "allowing Fairless [Energy] to pursue a rolled in rate . . . undermines the Commission's longstanding policy requiring incremental pricing on expansion facilities." *Id.* at P 48 (J.A. 129). The Commission concluded that the uniformity factor alone would justify its exercise of primary jurisdiction. Reh'g Order at P 20 (J.A. 241–42).

The Commission's conclusion regarding the second *Arkla* factor also was consistent with reasoned decisionmaking. The Commission's explanation adequately shows why the

14

interpretation could have industry-wide ramifications, including for other shippers on the MarketLink project and shippers on other expansion projects. The Commission also sufficiently explained why the need for uniformity in this matter implicated its policy preference for incremental pricing rather than rolled-in pricing for expansion facilities, as shippers using expansion facilities might otherwise argue that they too should be billed at a rolled-in rate. In this regard, the Commission sufficiently explained why the natural gas industry at large is served when there is "consistent application of how tariffs, service agreements, and related Commission certificate orders are to be construed in disputes like this." *Pet. Order* at P 47 (J.A. 129) (citation omitted).

**3.**

The third *Arkla* factor considers whether issues relate to the Commission's "regulatory responsibilities." *Bay Gas Storage Co.*, 131 FERC ¶ 61,034, at P 21. Fairless Energy argues that the Commission's reliance on *United Illuminating Co.* as support for this factor is improper because the disputed issues here are neither novel nor involve "unfamiliar regulatory concepts or policy considerations." Pet'r Br. 45. Fairless Energy contends that because this matter involves a private contract where there is no dispute regarding either the justness or reasonableness of the applicable rates at issue, the case does not impact the Commission's regulatory responsibilities under the third *Arkla* factor.

In addressing the third *Arkla* factor, the Commission justified its resolution of this rate dispute on the grounds that it has "an interest in enforcing [natural gas transportation] rates and ensuring that pipelines can collect Commission-approved rates to . . . recover the costs of the certified facilities associated with such rates." *Pet. Order* at P 49 (J.A. 130). The

15

Commission cited *United Illuminating Co.* to support its proposition that a bilateral contract dispute over cost responsibilities can implicate the Commission's regulatory responsibilities and again explained that this dispute implicates pricing for expansion facilities beyond the parties to the agreement at issue. *Pet. Order* at P 50–51 (J.A. 130–31).

The Commission's explanation of its consideration of the third *Arkla* factor was also consistent with reasoned decision-making. It explained its regulatory interest in the rate for expansion services in the absence of a negotiated rate, especially in light of its policy preference for incremental pricing. As it did with the other factors, the Commission emphasized that this was not merely a private contractual dispute, contrary to Fairless Energy's assertions and the precedents relied on by Fairless Energy. The Commission sufficiently responded to Fairless Energy's attempts to distinguish *United Illuminating Co.*, on which the Commission chiefly relied.

*****

After considering the Commission's record explanation of its decision to exercise jurisdiction in light of the *Arkla* factors, the Commission's decision to exercise primary jurisdiction over the Transco-Fairless Energy transportation rate dispute was not arbitrary or capricious.

**B.**

Fairless Energy next contends that even if the exercise of primary jurisdiction was proper, the Commission declared a rate without considering either Fairless Energy's evidence that it had reached a negotiated rate with Transco or "the history of the contract and the evidence of the parties' course of dealing

16

leading up to their 2018 Agreement." Pet'r Br. 31. "Fairless
[Energy]'s position is that the parties agreed to apply the Zone
6 to Zone 6 reservation rate when they negotiated their 2018
Agreement." Pet'r Br. 47. To support this position, Fairless
Energy points out that the Commission should have considered
the context surrounding the 2018 Agreement to determine
whether there was an ambiguity. "In failing to do so, the
Commission failed to consider important aspects of the
problem because it did not afford the parties the opportunity to
develop and present evidence." Pet'r Br. 47. As a result of this
failure, Fairless Energy argues that the Commission's orders
were arbitrary and capricious.

The Commission maintains that it reasonably made the
rate determination in this matter. First, the Commission
emphasized that the 2018 Agreement unambiguously did not
specify a negotiated rate so extrinsic evidence could not be
used. *Reh'g Order* at P 21–23 (J.A. 242–43). The Commission
next observed that Fairless Energy cannot dispute that it and its
predecessors received natural gas transportation services to the
Fairless plant by way of the MarketLink project. *Pet. Order* at
P 58–59 (J.A. 133). The Commission then explained that
because Fairless Energy used MarketLink project services
without a negotiated rate, the applicable   rate was the
incremental rate from Transco's Tariff.

The Commission's rationale is supported by the language
of the 2018 Agreement, which: (1) specifies in its title that it is
the "Form of Service Agreement (For Use Under Seller's Rate
Schedule FT)," J.A. 132 n.86 (citing J.A. 75); (2) states that
Transco's natural gas transportation services are provided
pursuant to the MarketLink project, J.A. 133 ¶ 60 (citing J.A.
75); and (3) contains the following provision incorporating
Transco's Tariff and Rate Schedule FT, unless a negotiated rate
is set forth in the 2018 Agreement:

17

> Buyer shall pay Seller for natural gas delivered
> to Buyer hereunder in accordance with Seller's
> **Rate Schedule FT** and the **applicable
> provisions of the General Terms and
> Conditions of Seller's FERC Gas Tariff** as
> filed with the Federal Energy Regulatory
> Commission, and as the same may be legally
> amended or superseded from time to time. Such
> rate schedule and General Terms and
> Conditions are by this reference made a part
> hereof. **In the event Buyer and Seller
> mutually agree to a negotiated rate** pursuant
> to the provisions in Section 53 of the General
> Terms and Conditions and specified term for
> service hereunder, **provisions governing such
> negotiated rate (including surcharges) and
> term shall be set forth on Exhibit C to the
> service agreement**.

J.A. 132 n.87 (citing J.A. 76) (emphasis added).

Considering these provisions, the Commission reasonably
started its evaluation with the 2018 Agreement's Exhibit C and
determined that it unambiguously "did not establish a
negotiated rate" because it stated "None" in the location for the
specification of a negotiated rate. *Reh'g Order* at P 23 (J.A.
243). After reaching this decision, the Commission was
appropriately able to decline to consider extrinsic evidence.
*See Iberdrola Renewables, Inc. v. FERC*, 597 F.3d 1299, 1304
(D.C. Cir. 2010) ("If a contract is not ambiguous, extrinsic
evidence cannot be used as an aid to interpretation," and, thus,
"if the intent of the parties on the particular issue is clearly
expressed in the document, 'that is the end of the matter.'").
Moreover, because the 2018 Agreement did not contain a
negotiated rate, the Commission sufficiently explained that it

18

had to discern the applicable rate from Transco's rate schedule FT, which was the incremental rate for use of the MarketLink project because that capacity was used and identified. In the context of the foregoing, the Commission's decision to select the MarketLink project incremental rate is the product of reasoned decisionmaking.

**\*\*\*\*\***

For the foregoing reasons, Fairless Energy fails to demonstrate that either the Commission's exercise of primary jurisdiction over the Transco-Fairless Energy natural gas transportation rate dispute or its decision regarding the appropriate rate was arbitrary and capricious. The court therefore denies Fairless Energy's consolidated petitions.

*So ordered.*